UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER MICHAEL
WHEELER,

       Plaintiff,

v.                          CASE NO. 6:16-cv-1318-Orl-37JBT

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,[1]

       Defendant.
_____/

## REPORT AND RECOMMENDATION[2]

**THIS CAUSE** is before the undersigned on Plaintiff's appeal of an

administrative decision denying his application for Supplemental Security Income.

In a decision dated December 29, 2014, the Administrative Law Judge ("ALJ")

found that Plaintiff had not been under a disability, as defined in the Social Security

---

[1] Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Act, since September 5, 2012, the date the application was filed.  (Tr. 12–22.) Having considered the parties' joint memorandum and being otherwise fully advised, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED in part** and **REVERSED and REMANDED in part** for further administrative proceedings.

### I.      Issues on Appeal

Plaintiff raises the following issues on appeal:

> A.     Whether the ALJ applied the correct legal standards when she found Mr. Wheeler not disabled based on Medical-Vocational Rule 202.21.
>
> B.     Whether the ALJ applied the correct legal standards to the opinion of Mr. Wheeler's treating physician, Dr. Lavoie.

(Doc. 15 at 11, 20.)

The undersigned recommends that the first issue has merit.  Specifically, the ALJ's finding that Plaintiff's non-exertional limitations "have little or no effect on the occupational base of unskilled work" is not supported by substantial evidence. (Tr. 21.)  Thus, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings regarding this issue.  However, the undersigned recommends that the second issue lacks merit because the ALJ articulated good cause for discounting the opinions of Dr. Stephane Lavoie.

## II.    Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).  "With respect to the Commissioner's legal conclusions, however, our review is *de novo.*"  *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.    The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairments of "seizures (i.e. tonic-clonic seizure, complex partial seizures without mention of intractable epilepsy) and degenerative disc disease status post repair."[3]  (Tr. 14.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing.  (Tr. 14.)

Prior to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 416.967(b)

---

[3] The sequential evaluation process is described in the ALJ's decision.  (Tr. 12–14.)

> except with only frequent kneeling, crouching, crawling, and climbing of ramps and stairs; only occasional stooping; no climbing of ladders, ropes and scaffolds; must avoid concentrated exposure to vibrations; and must avoid exposure to hazards (i.e. unprotected height, dangerous machinery, etc.).

(Tr. 14.)

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (Tr. 20.)  At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Grids") to find that there were a significant number of jobs in the national economy that Plaintiff could perform.  (Tr. 21.) Therefore, Plaintiff was not disabled.  (Tr. 21–22.)

## IV.    Analysis

### A.    Reliance on the Grids

In *Syrock v. Heckler*, the Eleventh Circuit explained the applicability of the Grids as follows:

> The Medical-Vocational Guidelines come into play at [step five].  Those guidelines include detailed grid regulations which, based on a claimant's residual functional capacity, age, education, and work experience, compel a conclusion on the issue of ability to perform other substantial work, and thus as to whether the claimant is disabled.
>
> The grid regulations are not applicable in all situations.
>
> ["]At a given residual functional capacity, if a claimant is capable of some work at that level but not a full range of work, then that level of the grids is not applicable.  [Med.-Voc. Guidelines] at §§ 201.00(h), (i), 202.00(b); [other citations omitted].  Second, in determining residual

4

functional capacity only exertional limitations are considered, *i.e.* ability to lift, stand, push, pull, handle, etc.  If a claimant has nonexertional impairments that significantly limit the ability to do basic work activities— for example, sensory impairments such as skin or respiratory sensitivity and mental or emotional impairments—then the grid regulations do not apply.  *Id.* at § 200.00(e).["]

However, when both exertional and nonexertional work impairments exist the grids may still be applicable. "[N]on-exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level."  Therefore, when both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Courts will review this determination only to determine whether it is supported by substantial evidence.

764 F.2d 834, 836 (11th Cir. 1985) (citations and footnotes omitted).

In this case, the ALJ found that although Plaintiff had non-exertional limitations, those limitations did not preclude reliance on the Grids:

If the claimant had the [RFC] to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical Vocational Rule 202.21.  As the additional limitations do not preclude a wide range of employment, the undersigned finds that they have little or no effect on the occupational base of unskilled work. *See Syrock v. Heckler*, 764 F.2d 834 (11th Cir. 1985). Specifically, the limitations noted above (i.e. only frequent kneeling, crouching, crawling, and climbing of ramps and stairs; only occasional stooping; no climbing of ladders, ropes and scaffolds; must avoid concentrated exposure to vibrations; and no hazards (i.e. unprotected height, dangerous machinery, etc.)) are consistent with a

significant number of unskilled jobs.  The undersigned takes administrative notice of the approximate 1,600 sedentary to light, unskilled occupations in the national economy as indicated by 202.00(a) of the [Grids]. Accordingly, a finding of "not disabled" is appropriate under the framework of section 202.21 in the Medical-Vocational Guidelines.

(Tr. 21.)

Section 202.00(a) of the Grids provides:

202.00     *Maximum sustained work capability limited to light work as a result of severe medically determinable impairment(s).* (a) The functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work.  Approximately 1,600 separate sedentary and light unskilled occupations can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy.  These jobs can be performed after a short demonstration or within 30 days, and do not require special skills or experience.

Thus, to support her finding that Plaintiff's non-exertional limitations did not preclude a wide range of employment, the ALJ took administrative notice of the approximately 1,600 sedentary and light unskilled occupations, each of which represented numerous jobs in the national economy.  (Tr. 21.)  However, as the ALJ noted, the RFC assessment contained a number of non-exertional limitations. (Tr. 14.)  It is not clear that the approximate 1,600 occupations cited by the ALJ are consistent with any of Plaintiff's non-exertional limitations.   Thus, the undersigned recommends that the ALJ's finding that Plaintiff's non-exertional limitations "have little or no effect on the occupational base of unskilled work" is not supported by substantial evidence.  (Tr. 21.)  One might speculate that that

6

might be the case, but that is not a substitute for evidence in the record.

A similar situation was presented in *Owens v. Commissioner of Social Security*, 508 F. App'x 881 (11th Cir. 2013).[4]  As the Eleventh Circuit explained in that case:

> [O]nce the ALJ determined that Owens was unable to perform any past relevant work, the burden shifted to the Commissioner to show the existence of jobs in the national economy which, given Owens's impairments, he could perform.  The ALJ concluded that, based on his exertional limitations, Owens retained the residual functional capacity to perform unskilled medium work and that his nonexertional limitations did not significantly limit his basic work skills at this level.  However, despite the existence of nonexertional impairments, the ALJ did not introduce independent evidence to support this conclusion—whether by way of VE testimony or otherwise—articulating specific jobs in the national economy that Owens can perform, and therefore failed to develop a full and fair record with substantial evidence on this issue.

*Id.* at 884 (citations omitted).

Similarly, in this case, the ALJ did not identify any specific jobs in the national economy that Plaintiff could perform.  Thus, the undersigned recommends that this case be remanded so that the ALJ can attempt to provide substantial evidence to support her conclusion that Plaintiff's non-exertional limitations do not preclude a wide range of employment, either through VE testimony or otherwise.

---

[4] Although the undersigned does not rely on unpublished opinions as binding precedent, they may be cited throughout this Report and Recommendation as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

Alternatively, the ALJ could reconsider the application of the Grids.

### B.   Opinion of Treating Physician Stephane Lavoie, MD

On the second issue, Plaintiff argues that the ALJ failed to apply the correct legal standard to an opinion of Dr. Lavoie, a treating physician.  (Doc. 15 at 20–22.)  Specifically, Plaintiff contends that the ALJ erred in giving "little weight" to Dr. Lavoie's recommendation that Plaintiff avoid lifting objects weighing in excess of fifteen pounds.  (*Id.*; Tr. 19.)

To discount the opinions of a treating doctor, the ALJ has to provide "good cause."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good cause to discount a treating doctor's opinion exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id.* at 1240–41.  The Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

The ALJ noted that, following an anterior cervical discectomy and fusion with allograft and plate at C5-6 and C6-7 performed by Dr. Lavoie on February 19, 2013 (Tr. 331–33), Plaintiff saw Dr. Lavoie twice, in March and April of 2013.  (Tr. 19.)  During both appointments, which occurred two and six weeks after Plaintiff's surgery, Dr. Lavoie restricted Plaintiff to "[m]aximum lifting of 15lbs."  (Tr. 328, 330.)  The ALJ stated:

8

> The undersigned notes that the claimant's treating physician[']s recommendations for the claimant to avoid lifting objects weighing in excess of 15lbs. seems consistent with some [sic] who recently underwent such a procedure. However, given that this limitation appears to be solely for his recovering purposes and not for an extended duration, and his later unremarkable findings upon examination (Ex 6F, 7F and 10F) the undersigned accords it little weight.

(Tr. 19.)

The undersigned recommends that substantial evidence supports the ALJ's conclusion that this restriction was for recovery purposes and not for an extended duration. Plaintiff saw Dr. Lavoie twice for "post surgical follow up visit[s]" only two and six weeks after surgery. (Tr. 327–30.) The records from these appointments focused primarily on Plaintiff's recovery from the surgery. (Tr. 327–30.) Other restrictions imposed during those visits, such as the wearing of a neck brace and "[n]o excessive or impact related activities," appear to be temporary. (Tr. 327–30.) The notes also reflect that Plaintiff was gradually increasing his range of motion exercises and decreasing his use of the neck brace. (Tr. 328, 330.) Thus, it was reasonable for the ALJ to conclude that the fifteen-pound lifting limitation was only temporary.

Additionally, the undersigned recommends that the ALJ's statement that Plaintiff later exhibited unremarkable findings upon examination is supported by substantial evidence. Although Plaintiff argues that this statement is conclusory (Doc. 15 at 22), the ALJ explained what she meant by "unremarkable," and discussed supporting records from the Neurology Center of Florida and Central

Florida Regional Hospital from April 2013 to August 2014.  (Tr. 19–20.)

For example, regarding Plaintiff's visit to the Neurology Center of Florida in April 2013, the ALJ stated that "the claimant was essentially unremarkable upon examination (i.e. full strength, intact sensation, normal gait, normal reflexes, no neck tenderness, intact and appropriate insight and judgment, full orientation, intact memory, normal mood, full affect, no musculoskeletal abnormalities[,] etc.)." (Tr. 19.)  Regarding Plaintiff's visits to Central Florida Regional Hospital, the ALJ noted that in July 2013, Plaintiff "demonstrated no neurological deficits, no tenderness, and full ranges of motion throughout."  (Tr. 19.)  The ALJ also noted that in August and September 2013, Plaintiff's examination findings were essentially unremarkable.   (Tr. 19.)   Finally, regarding Plaintiff's visit to the Neurology Center of Florida in August 2014, the ALJ noted that "the claimant was essentially unremarkable (i.e. full strength, intact sensation, normal gait, normal reflexes, intact and appropriate insight and judgment, full orientation, intact memory, normal mood, full affect, no musculoskeletal abnormalities[,] etc.)."  (Tr. 20.)  The records from the aforementioned visits support the ALJ's conclusion that Plaintiff's examination findings were "unremarkable" on those visits.  (Tr. 311–13, 315–17, 376–81, 391–404.)  Thus, the undersigned recommends that the ALJ did not err in according Dr. Lavoie's temporary opinion little weight.

## V.    Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ.  Thus, the question is not

whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the undersigned respectfully recommends that the ALJ's decision be affirmed in part and reversed and remanded in part.

Accordingly, it is respectfully **RECOMMENDED** that the Court enter an order stating in substance:

"1.     The Clerk of Court is directed to enter judgment, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING in part** and **REVERSING in part** the Commissioner's decision and **REMANDING** with instructions to the Commissioner to: (a) provide substantial evidence, if possible, supporting the finding that Plaintiff's non-exertional limitations are not severe enough to preclude a wide range of employment at the given work capacity level, or alternatively, reconsider the application of the Grids; and (b) conduct any further proceedings deemed appropriate.

2.     The Clerk of Court is further directed to close the file.

3.     Should this remand result in the award of benefits, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, Plaintiff's attorney is **GRANTED** an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b).  Plaintiff's attorney shall file such a petition within **thirty (30) days** from the date of the Commissioner's letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past due benefit

11

calculation stating the amount withheld for attorney's fees.  *See* In re: *Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No. 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412."

      **DONE AND ENTERED** at Jacksonville, Florida on February 27, 2017.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Roy B. Dalton, Jr.
United States District Judge

Counsel of Record